THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DUKE HUBBARD, Defendant-Appellant.

Fifth District    No. 5—94—0050

Opinion filed November 17, 1995.

Lawrence J. O'Neill, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Wayne Morris, State's Attorney, of McLeansboro (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN[1] delivered the opinion of the court:

Defendant, Duke Hubbard, appeals his conviction on two counts of burglary and two counts of theft. The defendant claims that he was denied his statutory right to a speedy trial. He further claims that he was denied a fair trial based upon the use of hearsay evidence to establish his guilt.

Defendant was arrested on June 10, 1993. At the time of his arrest in Hamilton County, defendant enjoyed bail on pending charges in Jackson County. In August of 1993, the defendant pled guilty but mentally ill to the Jackson County charges and was sentenced by that court to two consecutive six-year terms of imprisonment. On September 16, 1993, the defendant appeared in Hamilton County to enter pleas of guilty but mentally ill to all pending Hamilton County charges. The trial judge determined that the change of pleas was voluntary, but the judge declined to accept the pleas, pending his review of a psychiatric report prepared for Jackson County. In anticipation

---

[1]Justice Kuehn was assigned to this case in substitution for one of the original panel members, Justice Lewis, who retired effective August 1, 1995.

that the report would justify the defendant's pleas, the trial judge set October 21, 1993, as the sentencing date.

On October 18, 1993, defendant filed numerous *pro se* motions. He moved to dismiss his pending charges, asserting that the court's failure to accept his pleas of guilty but mentally ill allowed the 120-day statutory speedy trial limitation to run. He also moved to dismiss his pending charges based upon the ineffectiveness of trial counsel, the use of improper investigative techniques, and the State's failure to provide him with proper medical treatment. On October 21, 1993, the trial court vacated the plea proceedings, obliged defendant's request for the appointment of new counsel, and scheduled November 18, 1993, for the purpose of addressing pretrial matters.

On November 18, 1993, the court denied defendant's motion to dismiss for violation of his statutory right to speedy trial. The court ruled that defendant's guilty pleas on September 16, 1993, coupled with motions defendant had filed, constituted delay chargeable against the defendant and tolled the running of the statute from September 16, 1993, through November 18, 1993.

The defendant's trial commenced on December 6, 1993, and the jury convicted the defendant on all counts.

The following are the relevant facts from defendant's trial. Victims John and Gerry Engel stored flea market merchandise at the home of Mrs. Engel's deceased mother. Mrs. Engel boxed the items and affixed price tags to them so that she could eventually transport them to the flea market for sale. In June 1993, Mrs. Engel noticed that some items were missing. Her husband noticed that someone apparently entered the home through a window. The Engels notified the police of the theft. Within a few hours of reporting the theft, the Engels discussed their loss with friends, who were also flea market aficionados. The Engels learned that friends and acquaintances purchased some of their missing merchandise at a yard sale at the home of Ida Fay and Shirley Boner. Duke Hubbard lived with Ida Fay and Shirley Boner.

On June 7, 1993, the police obtained permission to search Ida Fay Boner's home. The Engels accompanied them and identified property found on the porch of the Boner household as property which they had stored in Mrs. Engel's mother's home. At that point, the police asked Ida Fay Boner to accompany them to the McLeansboro police station, where she was advised of her constitutional rights and was interrogated. After four hours of interrogation, Deputy Sheriff John Moore reduced her statements to written form. Ms. Boner signed a written statement and went home.

In her June 7, 1993, statement, Ida Fay Boner told police that

the defendant told her he broke into the Engel home. She further advised that he admitted the burglary of another home, and this statement led to further investigation and the charges contained in counts III and IV. At the trial, however, Ida Fay testified that the defendant told her the items came from auction purchases and out of dumpsters. She denied what she told the police and claimed that she was threatened and coerced into signing the statement. Over defense objections, the State then used the June 7, 1993, prior inconsistent statement as substantive evidence to convict the defendant.

On January 20, 1994, the court sentenced the defendant to an extended term of 14 years in prison on the two burglary charges and 10 years in prison on the two theft charges, to be served concurrently. Because the defendant was on bail when the offenses were committed, the sentences were imposed to run consecutively to the second of two consecutive six-year prison terms imposed by Jackson County.

Defendant contends that the trial court erred in denying his motion to dismiss for violation of his statutory right to speedy trial.

A total of 179 days elapsed between defendant's June 10, 1993, arrest and December 6, 1993, trial. The trial court attributed 63 days of delay to defendant—the time period between September 16, 1993, when defendant told the court he wished to plead guilty and November 18, 1993, when the court addressed his *pro se* speedy trial motion. If this period of time constitutes a delay properly attributable to the defendant, the trial commenced on the 116th day of detention attributable to the State and the 120-day statutory limitation was satisfied.

■ An accused not tried within 120 days from the date he was taken into custody is entitled to discharge, unless he caused the delay of his trial. (725 ILCS 5/103—5(a) (West 1992); *People v. Reimolds* (1982), 92 Ill. 2d 101, 440 N.E.2d 872.) The defendant bears the burden of affirmatively establishing that he did not receive a trial within the 120 days. (*People v. Bowman* (1990), 138 Ill. 2d 131, 561 N.E.2d 633.) The defendant also bears a responsibility for calling up his motions for hearing and disposition, and his failure to do so is delay sufficient to toll the statutory time period. (*People v. Jones* (1984), 104 Ill. 2d 268, 472 N.E.2d 455.) The trial court's determination of who caused the delay is granted deference. (*Reimolds*, 92 Ill. 2d at 107, 440 N.E.2d at 875; *Bowman*, 138 Ill. 2d at 137, 561 N.E.2d at 636.) The standard of review is whether the trial court abused its discretion in charging a delay to the defendant. *Bowman*, 138 Ill. 2d at 137, 561 N.E.2d at 636.

■ The defendant's September 16, 1993, guilty but mentally ill

pleas caused delay attributable to the defendant. (*People v. Jones* (1986), 145 Ill. App. 3d 804, 495 N.E.2d 1330, *appeal denied* (1986), 113 Ill. 2d 564.) The court correctly ruled that the delay from September 16, 1993, to October 21, 1993, caused by defendant's intention to plead guilty, was attributable to defendant. (See, *e.g., People v. Bowan* (1990), 138 Ill. 2d 131, 561 N.E.2d 633; *People v. Lendabarker* (1991), 215 Ill. App. 3d 540, 575 N.E.2d 568, *appeal denied* (1991), 141 Ill. 2d 552, 580 N.E.2d 127, *cert. denied* (1992), 503 U.S. 960, 118 L. Ed. 2d 208, 112 S. Ct. 1561.) The defendant informed the court that he wished to plead guilty but mentally ill to his Hamilton County charges. The court conducted a plea proceeding but did not accept the pleas because the court needed to review the Jackson County psychiatric report. The court tentatively set sentencing for October 21, 1993. The court allowed a reasonable period of time to access information necessary to determine whether the defendant's desired pleas were factually appropriate. The defendant's pleas nonetheless demonstrated an express intention to forego trial and to abandon an assertion of innocence. The court did no more than rely on the defendant's stated intention to waive his right to trial. Nothing is presented in this case to warrant departure from the immutable proposition that a defendant's express desire to enter a plea of guilty tolls statutory time constraints. Those constraints are designed to assure speedy trials for detained defendants who, clothed with a presumption of innocence, persist in the right to stand trial.

Defendant also challenges that portion of the period of delay attributed to him after the trial court rejected the tendered pleas of guilty on October 21, 1993. Defendant contends that pending *pro se* motions should not have served as a basis for the attribution of delay from October 21, 1993, to November 18, 1993. Illinois cases provide, however, that the court should charge the defendant with delay resulting from his filing of motions. (*People v. Lendabarker* (1991), 215 Ill. App. 3d 540, 553, 575 N.E.2d 568, 576.) Additionally, the defendant is charged for the time naturally associated with processing such motions. (*Lendabarker*, 215 Ill. App. 3d at 553, 575 N.E.2d at 576.) Defendant urges us to condemn the trial court for its treatment of the defendant's *pro se* motions as matter warranting delay. The merit to be found in a given pretrial motion is not the *sine qua non* for a tolling of statutory time constraints. Defendant contends, however, that the *pro se* motions, authored by one of questionable mental stability, were frivolous and, as such, unworthy of impact on the defendant's right to a speedy trial. The record reflects that the defendant's October 18, 1993, motions demonstrated stable thinking. His speedy trial motion provided appellate counsel with a contention

of error. The defendant's *pro se* challenge to the effectiveness of his appointed attorney resulted in the court's appointment of new trial counsel. This new attorney pursued one of the defendant's *pro se* motions. If the *pro se* motions were meritless, the defendant's attorney, rather than the court, bore the responsibility to withdraw the motions. The record simply does not support the conclusion that all of the *pro se* motions were frivolous.

The speedy trial motion alone does not attribute delay to the defendant. (*People v. McKinney* (1978), 59 Ill. App. 3d 536, 375 N.E.2d 854, *appeal denied* (1978), 71 Ill. 2d 619.) Several of the *pro se* motions correctly deserved more than summary disposal. The court committed no error in refraining from deciding *sua sponte* which of the defendant's pending motions warranted a hearing and which did not. The trial court did not abuse its discretion in attributing 63 days of delay to the defendant and committed no error in denying defendant's motion to dismiss.

The second basis for appeal rests in the contention that the prosecution was flawed by the admission of Ida Fay Boner's prior inconsistent statement as substantive evidence.

The core evidence of guilt in this prosecution was the hearsay statement of Ida Fay Boner. The rest of the evidence presented lacked any direct link between the crimes and the defendant. Without the substantive admission of Ms. Boner's prior statement, the State could establish the possession of recently stolen items and their sale by Ms. Boner. The State could not, however, link the stolen items to the defendant, other than the inference to be drawn from his presence at the Boner home.

█ The statement was admitted as substantive evidence under section 115—10(c)(2) of the Criminal Code of Procedure of 1963 (725 ILCS 5/115—10.1(c)(2) (West 1992)). Section 115—10.1(c)(2) establishes a special rule for the admission of prior inconsistent statements of witnesses in criminal cases. It provides that evidence of a statement made by a witness, and either written or signed by such witness, is not made inadmissible by the hearsay rule if the statement is inconsistent with the witness' testimony at trial, the witness is subject to cross-examination concerning the statement, and the statement "narrates, describes, or explains an event or condition of which the witness had *personal knowledge*." (Emphasis added.) 725 ILCS 5/115—10.1(c)(2) (West 1992).

The content of Ida Fay Boner's statement details events which she claims to have seen. The statement also contains a series of admissions, threats, and conclusions, all of which Ms. Boner claims were told to her by the defendant. Ms. Boner did not see the defen-

dant commit any of the crimes. This hybrid of knowledge was put to the jury as substantive evidence of the defendant's guilt. Defendant challenged those passages of the written statement which were introduced to prove Ms. Boner's prior claim that the defendant admitted his guilt.

In *People v. Cooper* (1989), 188 Ill. App. 3d 971, 544 N.E.2d 1273, this court held that the personal-knowledge requirement contained in section 115—10.1(c)(2) limits the use of out-of-court statements to those events the witness actually observed. The personal-knowledge limitation excludes the admission of information acquired from what some third party has told the witness. Clearly, the admission of Ms. Boner's written statement in its entirety exceeded this court's interpretation of the authorizing statute. The State asks us to revisit the *Cooper* opinion and its interpretation of the personal-knowledge requirement contained in section 115—10.1(c)(2). The State seeks a broader definition of personal knowledge—a definition that would sanction the substantive use of prior inconsistent statements that record not only what a witness has seen but what a witness has heard.

The State contends that *Cooper* created an anomaly which we are empowered to correct. The State points to the fact that *Cooper* excludes as substantive evidence a defendant's admission which a witness reported prior to trial while admitting as substantive evidence the same admission if the witness reported it during trial testimony. The State misapprehends the source of the anomaly.

The use of prior inconsistent statements as substantive evidence is a creature of statute. Legislators gave birth to this creature despite a judicial environment hostile to its existence. The Illinois Supreme Court, prior to the passage of section 115—10.1, emphatically rejected the substantive admission of a testifying witness' prior inconsistent signed statement, noting:

> " 'It must be recognized *** that in criminal cases these extrajudicial statements are often highly incriminating and are usually made outside the presence of the defendant. To give these statements substantive value would allow an accused to be convicted on the extrajudicial statements of witnesses—a practice that runs counter to the notions of fairness on which our legal system is founded. [Citation.] Therefore, prior self[-]contradictions are not to be treated as having any substantive or independent testimonial value.' " (*People v. Spicer* (1979), 79 Ill. 2d 173, 180, 402 N.E.2d 169, 172, quoting *People v. Paradise* (1964), 30 Ill. 2d 381, 384, 196 N.E.2d 689, 690-91.)

Ida Fay Boner's out-of-court statement is admissible solely by virtue

of the codified hearsay exception found in section 115—10.1. The legislature opened the door to this form of evidence, and the legislature determined the door's dimensions. To the extent that limitation is imposed on reported admissions, the seemingly illogical effect was created by legislators, not this court. A witness could always testify in open court under oath and in the presence of the defendant to admissions made to her by that defendant. If an out-of-court statement of such witness is admitted substantively, however, the statute condoning such admission requires that statement to narrate, describe, or explain an event or condition of which the witness had personal knowledge.

Justice Howerton did not misconstrue the legislative intent in his *Cooper* opinion. To be sure, his discussion was brief. He simply cited to an article in which Justice Steigmann, the author of section 115—10.1, explained the "personal knowledge" language contained in section 115—10.1(c)(2). (Steigmann, *Prior Inconsistent Statements as Substantive Evidence in Illinois*, 72 Ill. B.J. 638 (1984) (Steigmann).) The State's argument, that a defendant's admission is as much an event as conduct actually observed, is addressed:

> " 'Personal knowledge' as used in subsection (c)(2) is a term of art and does not have the meaning usually attributed to it. After all, every witness has personal knowledge of what he or she saw and heard. The personal knowledge requirement of subsection (c)(2) means more than that, however; it means the witness whose prior inconsistent statement is being offered into evidence must actually have seen the events which are the subject of that statement." Steigmann, 72 Ill. B.J. at 640.

The origins of section 115—10.1 can be found in a 1977 Michigan Law Review article written by professor Michael H. Graham, then of the University of Illinois. (Graham, *Employing Inconsistent Statements for Impeachment and as Substantive Evidence: A Critical Review and Proposed Amendments of Federal Rules of Evidence, 801(d)(1)(A), 613 and 607*, 75 Mich. L. Rev. 1565 (1977) (Graham).) Professor Graham proposed amendment of Federal Rule of Evidence 801(d)(1)(a) to allow the use of prior inconsistent statements as substantive evidence when the statement included information about which the witness had personal knowledge.

Professor Graham addressed the rationale for a personal-knowledge requirement. A witness with personal knowledge can be cross-examined about the truthfulness of the prior statement. (Graham, 75 Mich. L. Rev. at 1584.) The jury can observe the demeanor of the witness if the prior statement is recanted and inconsistent testimony is given. The jury gains nothing, however, from hear-

ing a witness merely narrate a third party's declaration regarding something about which the witness has no independent knowledge. (Graham, 75 Mich. L. Rev. at 1584.) In sum, the personal-knowledge requirement effectively excludes double hearsay statements, or those statements most open to fabrication, while assuring the opportunity for effective cross-examination on the witness' prior statements and observations. Graham, 75 Mich. L. Rev. at 1585.

It was error to admit Ida Fay Boner's statement into evidence. The State invites us to hold that the admission of Ms. Boner's entire statement, without redacting the portions that contained the defendant's admissions, constituted harmless error. We decline. From the very outset of this prosecution the defendant was filing inartful challenges to the reliability of Ida Fay Boner's statement. Although passages of the statement pertaining to her actual observations comport with our view of personal knowledge under the statute and would be admissible at a second trial of the defendant, a threshold test of the statement's reliability can be asserted. See, *e.g., Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139.

Under the facts presented, the State's essential witness was an accomplice. She owned the home that harbored the stolen merchandise. She was the culprit to whom people gave money in purchase of that merchandise. She was taken to the stationhouse justifiably as a target of investigation and, under lengthy interrogation, cast blame at the defendant. Under oath in the courtroom, she recanted her blame of the defendant, claiming that the statement was a product of coercion. In this regard, we note that despite her admission of criminal culpability, she was immediately released from custody and was never prosecuted after incriminating the defendant.

These convictions are not based on overwhelming evidence of guilt. Absent the product of Ms. Boner's interrogation, the State had scant evidence upon which to convict the defendant. Ms. Boner claimed under oath that her statement was coerced and bore false witness against the defendant. The jury, however, accepted as substantive evidence of guilt the blame Ms. Boner cast during interrogation. The admission of her written statement in its entirety was damaging secondhand hearsay. This prosecution drew its very efficacy from inadmissible hearsay.

Accordingly, we reverse the defendant's convictions and remand this case to the court below for a new trial.

Reversed and remanded.

HOPKINS and GOLDENHERSH, JJ., concur.