NO. 5-96-0006

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS,   )  Appeal from the 

                                       )  Circuit Court of 

     Plaintiff-Appellee,               )  St. Clair County.

                                       )  

v.                                     )  No. 95-CF-427

                                       )

LEROY LADD,                            )  Honorable

                                       )  James M. Radcliffe, 

     Defendant-Appellant.              )  Judge, presiding.  

_________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

On April 9, 1995, defendant attacked his paramour with a knife.  The police took him to jail that same day.  He has been locked up ever since. 

Defendant stood trial on October 17, 1995.  The jury deliberated to verdict the next day.  It acquitted defendant of attempted murder but reached guilty verdicts on accompanying aggravated battery and armed violence charges.  Defendant now serves four- and twelve-year concurrent prison terms imposed on the two guilty verdicts. 

This appeal examines the 191 days from defendant's arrest to trial's commencement.  We are asked to overturn defendant's convictions because he waited longer than 120 days in jail before trial began.

Here is a recapitulation of the relevant events that occurred during defendant's jail stay awaiting trial:

April 9, 1995 State places defendant in custody. 

May 5, 1995 Defendant waives preliminary hearing.

May 19, 1995 St. Clair County grand jury indicts defendant for aggravated battery, attempted murder, and armed violence.

June 26, 1995 Defendant files motion to dismiss complaint.

June 27, 1995 Defendant files 
pro se
 motion to dismiss.

June 29, 1995 Defendant seeks and obtains order setting motions for July 12, 1995.

August 14, 1995 Defendant files 
pro se
 motion to dismiss for violation of speedy trial rights.

August 15, 1995 Defendant's lawyer files motion for speedy trial discharge and argues motion.  Court allows defendant until August 25, 1995, to present additional authority in support of the motion.

September 15, 1995 The court denies the motion for discharge.

September 26, 1995 The court holds a status conference and sets trial for October 16, 1995.

October 16, 1995 The court denies the motion to dismiss complaint.

October 17, 1995 Trial begins.

A 
speedy
 public trial is constitutionally guaranteed to every American citizen.  U.S. Const., amend. VI.  Since the State possesses the power to level accusation, the power to deprive freedom based on accusation, and the power to control trial's timetable, a speedy trial assures that due process means something.  It secures the worth of other basic freedoms and promises the orderly administration of justice.  It exists in recognition of a simple truth that "justice delayed is justice denied."

In Illinois, the prompt disposition of criminal cases assumes new meaning by recent constitutional amendment overwhelmingly approved by the people of this State.  The Illinois Constitution, as it has since its inception, guarantees a speedy trial to any citizen accused of a criminal act.  Ill. Const. 1970, art. I, §8.  Now, it also guarantees any citizen that falls victim to a criminal act "timely disposition of the case following the arrest of the accused."  Ill. Const. 1970, art. I, §8.1(a)(6) (amended November 3, 1992).  In tandem, these assurances instruct that the speedy disposition of criminal charges is in everyone's interest.  In Illinois, a speedy trial is most assuredly the basic thread essential to our fabric of justice.

Additionally, our lawmakers provide specific statutory guidelines that impose express time limits for the processing of criminal cases.  Their design is to implement speedy trial rights.  
People v. Hamby
, 27 Ill. 2d 493, 495-96, 190 N.E.2d 289, 291 (1963).  Statutory time constraints also promote the innate fairness that prompt and orderly criminal justice brings.  Our legislature has long guaranteed that "every person in custody in this State for an alleged offense shall be tried *** within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***."  725 ILCS 5/103-5(a) (West 1994).

In this case, defendant's trial began 191 days from the date he was taken into custody.  Therefore, unless delay was occasioned by the defendant, his trial violates the statute's guarantee to speedy justice and his convictions cannot stand.

We review a September 15, 1995, order that denied defendant's speedy trial discharge motion.
(footnote: 1)  The order found that defendant's stay in jail for 191 days without a trial was due to delay that defendant occasioned.  The trial court decided that time's march to the speedy trial deadline halted on June 26, 1995, when defendant filed a motion to dismiss the criminal complaint. Moreover, defendant's motion suspended statutory time constraints until the motion was resolved.  Thus, the trial court's view of the motion's tolling effect suspends the statute's time clock from the motion's filing date until the eve of trial when the motion was ultimately denied.

We first examine the effect of defendant's motion to dismiss on the statutory duty to commence trial within 120 days.  The motion itself plainly lacks merit.  Defendant raises the motion's obvious deficiencies and frames the question--whether the trial court abused its discretion by finding that a patently meritless motion produces trial's delay.  In effect, defendant argues that the motion causes no delay because of its facially worthless content and that it follows that no delay exists to attribute to defendant.  

This argument is not dispositive of the case.  A motion's content is a necessary consideration in deciding whether it causes delay.  However, it does not control the essential question--whether the motion actually delays trial.  Here, defendant's meritless motion actually causes such a delay.

This case turns on the effect of a June 29, 1995, order.  The order set defendant's motion for hearing and disposition on July 12, 1995.  The trial court's decision bypasses this order without comment. 

The defendant scheduled the motion to dismiss complaint for hearing and disposition.  The procurement of an order that calls for the motion's disposition produces two pertinent consequences.  First, it causes a delay that defendant occasions regardless of the motion's content.  Second, it fixes a date certain for the resolution of pending motions.  After that date passes, the tolling effect lifts and time begins again to advance on the 120-day constraint. 

Initially, we discuss defendant's argument that the instant motions cannot produce attributable delay because of their content.  As a general proposition, defendants are charged with delay that occurs from filing motions.  
People v. Hubbard
, 276 Ill. App. 3d 98, 101-02, 657 N.E.2d 1159, 1162 (1995).  The statute's time constraints are suspended during that time naturally associated with processing such motions.  
People v. Lendabarker
, 215 Ill. App. 3d 540, 553-54, 575 N.E.2d 568, 576-77 (1991).  In addition, defendant bears the responsibility for setting his motions for hearing and disposition.  A failure to do so tolls the statutory time period.  
People v. Jones
, 145 Ill. App. 3d 804, 807, 495 N.E.2d 1330, 1333 (1986).

The trial court relied upon several cases that stand for the proposition that motions to dismiss charges work delay that is properly attributed to defendants.  See 
People v. Jones
, 104 Ill. 2d 268, 472 N.E.2d 455 (1984); 
People v. Frame
, 165 Ill. App. 3d 585, 519 N.E.2d 482 (1988); 
People v. DeStefano
, 85 Ill. App. 2d 274, 229 N.E.2d 325 (1967). 

Notwithstanding, the common attribution of delay because of defense motions does not mean automatic attribution of delay.  See 
People v. Jump
, 127 Ill. App. 3d 440, 468 N.E.2d 1278 (1984); 
People v. Ferguson
, 46 Ill. App. 3d 815, 361 N.E.2d 339 (1977).  The speedy trial statute contemplates more than the mechanical attribution of delay every time defendant engages in an act in pursuit of a defense.  A 
per se
 rule does not exist.  Speedy trial rights do not toll simply because a defendant files a motion.  
Ferguson
, 46 Ill. App. 3d at 818, 361 N.E.2d at 341.  If such a rule did exist, our inquiry could end here.

Not all motions cause delay.  "Whether a motion in fact causes delay depends on the facts and circumstances of each case, and the trial court must appraise the timeliness and complexity of the motion."  
People v. Montenegro
, 203 Ill. App. 3d 314, 317, 560 N.E. 2d 934, 936 (1990).  The 120-day rule is suspended only "`"when there has been actual delay of trial clearly attributable to the defendant."'"  
People v. Grant
, 104 Ill. App. 3d 183, 188-89, 432 N.E.2d 1129, 1133, (1982), quoting 
People v. Perkins
, 90 Ill. App. 3d 975, 979, 414 N.E.2d 110, 114 (1980), quoting 
People v. Hannah
, 31 Ill. App. 3d 1087, 1089, 335 N.E.2d 84, 86 (1975). 

There were actually two motions to dismiss on file.  The trial court focused on defense counsel's June 26, 1995, motion to dismiss complaint.  Defendant filed a 
pro se
 motion to dismiss on the following day.  Both motions were patently meritless.  

The June 26, 1995, motion to dismiss complaint sought the criminal complaint's dismissal and defendant's release from custody.  The request raised the statutory call for a probable cause determination within 30 days of a defendant's arrest.  See 725 ILCS 5/109-3.1 (West 1994).  The motion relied entirely upon the absence of a timely probable cause determination.  But defendant knowingly waived such a determination less than 30 days after his arrest.  On May 5, 1995, defendant appeared in open court and waived his scheduled preliminary hearing.  Defendant thereby surrendered the statute's protection.

Further, the motion sought defendant's release.  Assuming that the State violates section 109-3.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/109-3.1 (West 1994)), which it did not, the violation would not result in defendant's release.  See 
People v. Clarke
, 231 Ill. App. 3d 504, 596 N.E.2d 872 (1992). 

And finally, the motion sought the complaint's dismissal.  The State procured and obtained a valid grand jury bill of indictment on May 19, 1995.  The motion pursued a pointless act where the indictment had already supplanted the complaint as the charging instrument.

The June 27, 1995, 
pro se
 motion asked that the "case be dismissed."  The motion asserted the grand jury's failure to indict within 30 days, the victim's desire not to press charges, the absence of the victim's signature on the criminal complaint, and defendant's claim that he acted in self-defense.

Clearly, any prosecutor worth salt needs but a moment to prepare for these motions.  A cursory reading exposes their obvious deficiency.  We note that when finally asked to speak to defendant's motion to dismiss complaint, 123 days after defendant filed it, the prosecutor disposed of the motion's worth in two sentences.  He simply pointed out that the law did not extend the remedy sought and that even if it did, defendant was afforded a timely preliminary hearing.

The usual reason for the attribution of delay where defense motions raise a challenge to charges is absent here.  Since the motion did not challenge the indictment's validity, it cannot possibly threaten the prosecution's progress.  It caused neither a departure from the State's trial preparation nor a barrier to trial's orderly advance.  The motion harbored no chance of success.  It portended no harm to this prosecution.  It merely laid there and awaited a hand to deny it.

Nonetheless, a pretrial motion's merit is not the definitive measure of its tolling effect.  
Hubbard
, 276 Ill. App. 3d at 102, 657 N.E.2d at 1162.  The question is always whether the motion, regardless of its worth, actually causes delay.  Here, defendant's motions clearly caused a delay, albeit for a reason other than the one the trial court assigned.  Defense counsel procured a special setting for the court to conduct whatever proceedings were necessary to dispose of the two motions.  This met defendant's responsibility to call his motions up for disposition.  It also set the timetable for disposition.  The delay that followed is clearly a delay that defendant occasioned.  Therefore, there was no abuse of discretion in the trial court's attribution of delay to the extent that the delay related to time's passage from June 29, 1995, to July 12, 1995. 

The trial court, however, attributed delay to defendant from June 26, 1995, to the day it denied the discharge request and beyond.  The State pursues this position and argues that the motion's tolling effect does not dissipate until the motion was denied on October 16, 1995.  This position fails to account for the June 29, 1995, order that schedules a July 12, 1995, disposition of defendant's motions.  The request for a date certain to decide the motions and the subsequent order allowing that request yield a day of some consequence to any tolling effect thereafter ascribed to defendant's two motions. 

When the sun retreated over the horizon on July 12, 1995, defendant's motions remained unaddressed and undecided.

The judge who entered the June 29, 1995, order and scheduled the July 12, 1995, hearing was not the judge who decided the discharge motion.  On August 15, 1995, when defendant presented the motion, a judge unfamiliar with earlier events noted the June 29, 1995, order, pondered the July 12, 1995, setting, and wondered what happened.  Defense counsel offered the following:  

"We have not did [
sic
] nothing [
sic
] to toll my client's time in this case.  The time has continued to run. We have did [
sic
] nothing to toll his time. *** [I]t was set for July 12.  Mr. Stern was out of town.  That was why that case was continued from that time period.  I believe it was--he was on vacation or something and wasn't back in at that time."  

Assistant State's Attorney Stern responds:  

"And as to the vacation[--]that I may have been on vacation on July 12, 1995, I did not move to continue any cause.  And there are a number of [assistant] State's [A]ttorneys in the building who fill in on vacation schedules.  So I--to my knowledge, the State in no way caused any delay in any hearing." 

Apparently, nothing happened on July 12, 1995.  Other than the clouded recollections of the attorneys involved, the record is devoid of any reason or explanation for why nothing happened.  While the burden of proof rests with the defendant to establish a violation of the 120-day rule, delay cannot be attributed to defendant where the record is silent.  
People v. Grant
, 104 Ill. App. 3d 183, 188, 432 N.E.2d 1129, 1132 (1982); 
People v. Cunningham
, 77 Ill. App. 3d 949, 952, 396 N.E. 2d 876, 878 (1979).  Here, the failure to dispose of defendant's motions on the date set for disposition is unaccounted for.  The record is silent.  It affords no justification for the attribution of further delay to defendant.  After July 12, 1995, there is simply no reason to assign the pendency of the two motions as a cause for trial's delay that defendant occasions.

The comments of assistant State's Attorney Stern are instructive.  He defended against the claim that any inaction was due to his absence by insisting that he did not move to continue any hearing.  Further, he noted that even if the hearing was postponed due to his vacation, it did not have to be.  He points to the everyday presence of other assistants available to carry the torch.  All of this is no doubt true, but it offers nothing to justify the attribution of further delay to defendant.  

The reason is simple.  The right to a speedy trial embraces the duty of officials other than prosecutors.  Not all delays chargeable to the State are delays directly pursued by, or even with the desire of, those who prosecute.  The State is an entity that includes members of the judiciary.  In this instance, the court, not the defendant, was obliged to do something.  The court might have procured another assistant to take Stern's place if, indeed, Stern was unavailable.  The court might have briefly continued the motions to another date when Stern would be back in town.  Or the court might simply have proceeded without an assistant State's Attorney present.  The motions are deficient on their face.  A simple reading instructs on the State's position.  Indeed, both motions cry out for summary disposition.  

There is one thing the court could not do.  The court could not simply ignore the scheduled hearing date, allow defendant to remain in custody, and thereby indefinitely suspend the right to speedy trial.  The setting compels the court to either dispose of the motions at the appointed hour or account for why they remain undecided.  Contrary to the implication in Stern's comments, jailed defendants bear no responsibility to find standby prosecutors or otherwise secure someone prepared to prosecute them.  Defendant cannot be made to shoulder trial's delay because of pending motions, after he sets those motions for hearing and disposition and no one decides to show up.  As far as we know, defendant spent July 12, 1995, in jail.  Based on this record, he simply cannot be blamed for delay incurred because of inaction on that date.  

Thus, the trial court abused its discretion when it charged defendant with delay occasioned after July 12, 1995.

The tolling effect of the pending July 12, 1995, setting lifts after the scheduled disposition on that date inexplicably fails to take place.  The time delay from June 29, 1995, to July 12, 1995, was, nonetheless, properly attributable to defendant.  Therefore, on August 15, 1995, when the discharge motion presented itself for decision, the time chargeable to the State stood at 115 days.  The statute's deadline had not passed, but the time clock was running, and the deadline was close at hand.  After argument on the motion, the trial court allowed defendant until August 25, 1995, to present authority for his position.  It reserved its ruling and ultimately rendered a decision denying the discharge motion 30 days later on September 15, 1995.  

An accused is entitled to discharge if his trial begins more than 120 days after arrest, allowing for all delays that he himself causes.  
People v. McDonald
, 168 Ill. 2d 420, 438-39, 660 N.E.2d 832, 839 (1995).  Clearly, time ran out far in advance of defendant's October 17, 1995, trial date.  Defendant qualified for discharge on the day trial began.  However, defendant failed to raise a motion for discharge after the time ran.  The discharge remedy is not automatic.  It graces only those defendants who properly assert it.  
People v. Garcia
, 251 Ill. App. 3d 473, 477-78, 621 N.E.2d 1035, 1038-39 (1993).  

Thus, the effect of the 30-day delay after defendant asserted his right to discharge determines the outcome of this case.  If the prematurely raised motion for discharge suspended the running of the statute, the trial court's decision correctly denied defendant's request for discharge.  If time was tolled pending the decision on the motion, only 115 days of chargeable time existed on September 15, 1995.  Moreover, since defendant failed to raise his right to discharge at a time when the facts entitled him to it, defendant forfeits the discharge remedy.  Defendant must therefore prevail, if at all, on the August 15, 1995, discharge motion.  If that motion was correctly decided, defendant forfeited his speedy trial rights.

Our dispositive inquiry is whether defendant's premature discharge motion ripened into a meritorious motion during the trial court's advisement period.  If so, by the time the decision was reached, defendant deserved the discharge requested and the trial court reached the wrong result.  If the statute ran after August 15, 1995, but before September 15, 1995, defendant's convictions cannot stand.

The question of a discharge motion's effect on the speedy trial statute was initially addressed by our supreme court in 1953.  The court held that the filing of a discharge motion is not an act that delays trial.  It further held that "the fact that the trial court did not immediately hear his motion and later took it under advisement [does not] tend to show that the trial was delayed by any act on the part of defendant."  
People v. Tamborski
, 415 Ill. 466, 473, 114 N.E.2d 649, 653 (1953).  In 1966, the supreme court cited 
Tamborski
 for the proposition that a motion for discharge is not a motion the filing of which causes delay attributable to the defendant.  
People v. Moriarity
, 33 Ill. 2d 606, 611, 213 N.E.2d 516, 519 (1966).  Our court has consistently adhered to this precedent.  See 
People v. Uryasz
, 32 Ill. App. 3d 825, 336 N.E.2d 813 (1975);  
People v. McKinney
, 59 Ill. App. 3d 536, 375 N.E.2d 854 (1978);  
People v. Rideout
, 193 Ill. App. 3d 884, 550 N.E.2d 632 (1990);  
Hubbard
, 276 Ill. App. 3d 98, 657 N.E.2d 1159.

Therefore, our task seems simple enough.  If we abide the concept of 
stare decisis
, follow our high court's decision, and apply the math, the trial court was wrong to deny the discharge motion.  The State's chargeable time under the statute swelled from 115 days to 145 days while the issue awaited decision.  Since defendant's assertion of his right to discharge is not an act that delays trial, the speedy trial statute ran before a decision was made.  It follows that on the day the trial court reached its result, the result it reached was wrong.

Although our task seems simple, things are not always as they seem.  

While defendant's speedy trial rights were still intact, defendant sought the court's agreement to prolong the decision on the discharge motion to a time beyond the statute's 120-day deadline.  At the close of argument on August 15, 1995, concerned about the June 29, 1995 order, the court asked for the submission of authority that might define its effect.  The State provided two cases.  The court asked defense counsel if he wished to respond and, if so, how much time he wanted to submit additional authority.  Counsel asked for a week, and the court granted counsel until August 25, 1995.  The trial court agreed, at defendant's behest, not to consider or decide the discharge motion before August 25, 1995.  

In addition, this court had recently departed from the rule enunciated in 
Tamborski
 and has decided cases that attribute delay in processing discharge motions to defendants.  See 
People v. Medina
, 239 Ill. App. 3d 871, 607 N.E.2d 619 (1993); 
People v. Colts
, 269 Ill. App. 3d 679, 645 N.E.2d 225 (1993); 
People v. Andrade
, 279 Ill. App. 3d 292, 664 N.E.2d 256 (1996).  Our northern brethren shun 
Tamborski
 and call for an examination of the facts and circumstances of each case.  They establish criteria to determine whether the delay associated with a discharge motion falls to the defendant.  The attribution of delay depends upon "the timeliness of the motion, the complexity of the motion, whether the facts necessary to decide the motion are readily available, and the length of the continuance."  
Andrade
, 279 Ill. App. 3d at 300, 664 N.E.2d at 262-63.

Our colleagues treat supreme court precedent in a manner that strains our role as an intermediate court of review.  Under the doctrine of 
stare decisis
, when our supreme court has declared law on any point, only it can modify or overrule its previous opinion and lower courts are bound by such decision.  
Cummins v. Country Mutual Insurance Co.
, 281 Ill. App. 3d 5, 9, 666 N.E.2d 909, 911 (1996), 
aff'd
, 178 Ill. 2d 474, 687 N.E.2d 1021 (1997).

In 
Andrade
, the court discounts numerous appellate court decisions that follow the 
Tamborski
 precedent precisely because each is traceable to that precedent.  According to the 
Andrade
 opinion, we have consistently adhered to unsound work on the part of the high court:

"In *** 
Tamborski
 [citation], the court found [that] the time necessary to process defendant's motion to discharge was not chargeable to him. However, the court cited no authority for this holding.  In 
People v. Moriarity
 [citation], the court declared the rule and simply cited to 
Tamborski
."  
Andrade
, 279 Ill. App. 3d at 299, 664 N.E.2d at 262.

It is simply not our place to discard 
Tamborski
 and create an analytical approach at odds with its clear edict.  This holds true whether our supreme court cites authority that supports its holding or not. 

Notwithstanding, the first district cases that address this question reach results perfectly compatible with 
Tamborski
. 

Tamborski
 stands for the proposition that the act of filing a discharge motion does not toll a defendant's right to speedy trial.  Such an act does not delay trial.  It rather seeks discharge on a contention that time's passage already renders the prosecution infirm.  It places at issue whether defendant's further incarceration is legal.  Thus, there is sound reason to address discharge motions swiftly and to reach prompt but deliberate decisions once they are filed. 

Tamborski
 expressly states that courts cannot unilaterally delay hearings on such motions or take them under advisement and attribute the delay for such acts to defendants.  However, defendants can still occasion actual delays associated with bringing discharge motions.  Nothing in 
Tamborski
 calls for instantaneous, uninformed trial court rulings on a matter of such import.  Defendants cannot bring discharge motions in a manner that effectively circumvents adversarial response.  See 
Andrade
, 279 Ill. App. 3d 292, 664 N.E.2d 256.  A defendant who files a discharge motion on the day trial begins, the effect of which causes the trial to start the following day, causes actual delay rightfully attributable to him.  See 
Colts
, 269 Ill. App. 3d 679, 645 N.E.2d 225.  A defendant who agrees to the postponement of the decision on his discharge motion to a later date again causes actual delay attributable to him.  See 
Medina
, 239 Ill. App. 3d 871, 607 N.E.2d 619.  None of these circumstances offend 
Tamborski's
 commands.  

In our case, the trial court's agreement to defer the decision in order to allow defendant's submission of additional authority caused delay rightfully attributable to defendant.  The fact that the delay occurred after defendant filed for discharge does not invoke the 
Tamborski
 rule.  Defendant cannot pursue inaction on his discharge motion, gain the court's agreement to refrain from action, and subsequently raise 
Tamborski
 to assign the resulting delay to the State.  When the trial court agreed, at defendant's behest, to await additional authority from defendant before it decided what to do, the motion was not under advisement.  In effect, the motion was not submitted for decision until August 26, 1995.  Defendant affirmatively precluded any processing of his motion until August 25, 1995, passed.

The 21 days of decision-making that transpire after the solicited grace period presents a different question.  After August 25, 1995, defendant sought immediate discharge and awaited decision.  His further stay in the St. Clair County jail does nothing to delay decision.  The only conceivable act of delay was the tender of the question for decision.  After August 25, 1995, defendant did nothing to actually delay trial. 

This is not a case where defendant tendered the discharge motion for decision on the day trial began.  Defendant's timing did not hinder the State's ability to offer a reasoned response to the discharge motion.  The delay after August 25, 1995, is "under advisement" delay, unilaterally engaged in by the trial court.  Such delay cannot be charged to defendant.  
Tamborski
, 415 Ill. at 475-76, 114 N.E.2d at 654.  

Therefore, time's passage dishonors the law's assurance of prompt and speedy justice on September 1, 1995.  It validates defendant's demand for discharge on that date.  Since the State's allowable time to commence trial is spent by the time September 15, 1995, arrives, the denial of the speedy trial discharge motion on such date was an abuse of discretion.  

Accordingly, we reverse defendant's conviction.

Reversed.  

CHAPMAN, J., and GOLDENHERSH, J., concur.

FOOTNOTES
1:
Judge Radcliffe was assigned this case on October 17, 1995.  All matters prior thereto occurred before different judges.