(text box: 1)
 NO. 5-03-0146

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

Plaintiff-Appellee, )  Union County.

)

v. )  No. 01-CF-38

)

CHRISTOPHER MYERS, )  Honorable

)  Mark M. Boie,

Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________

JUSTICE MAAG delivered the opinion of the court:

The defendant, Christopher Myers, was charged with two counts of aggravated arson.  One count involved Valerie Murray and the other count involved Zackery Cobb.  The charges stemmed from a fire that occurred on March 23, 2002, at a mobile home inhabited by Rebecca Myers, the defendant's estranged wife.  The defendant was convicted of both counts following a jury trial on December 12, 2002.  On January 3, 2003, the defendant was sentenced to concurrent terms of eight years' imprisonment on each count.  The defendant's motion for a new trial was denied.  The defendant appeals.

The relevant facts are as follows.  The defendant lived with Rebecca and their eight-year-old daughter, Kyleigh, at Rebecca's mobile home until March 13, 2002, when the defendant moved out due to marital problems.  Rebecca and Kyleigh continued to live in the mobile home.  Rebecca was afraid to be at the mobile home alone with Kyleigh, due to the defendant's constant harassment and threats.  She asked her friend Valerie Murray to stay at the mobile home with her.

On the evening of the fire, Kyleigh spent the night with Rebecca's parents in Anna, Illinois, and Rebecca was visiting her friend Chance, who also lived in Anna, Illinois.  Murray and Zackery Cobb, Murray's boyfriend, were at Rebecca's mobile home watching television when Murray saw a light coming toward the mobile home.  Murray then heard a loud boom like an explosion.  Murray witnessed flames coming from the back side of the mobile home.  Cobb managed to extinguish the fire before the fire department arrived.  An arson investigator for the insurance company determined that the fire had been caused by a plastic jug containing gasoline and a makeshift cloth wick being ignited with a match or lighter and thrown underneath the mobile home.

The defendant testified that he gave a written statement to the police.  The defendant claimed that the police interrogated, intimidated, and coerced him into making the statement and that it was false.

The State introduced Terry Flores' testimony.  He met the defendant at the jail after the defendant had been arrested.  Flores was in jail on aggravated battery and mob action charges for beating a young man.  Flores testified that although he had not been promised anything in exchange for his testimony, he felt that it was the "right thing" to come forward with information about the defendant, since a child was involved.  Flores stated that the defendant told him that he had set fire to the trailer because he did not intend for his wife to get the trailer if they divorced.

Initially, public defender Patrick Cox was appointed as the defendant's counsel.  Cox immediately withdrew due to a conflict of interest.  Another public defender, William Ballard, was appointed, but he also withdrew.  Private attorney Gary E. Stark then entered an appearance as counsel on April 18, 2002.  Stark moved to withdraw on May 28, 2002, because the defendant had not paid his retainer fee.  On June 6, 2002, Allen James was appointed as counsel.  James filed a motion for a substitution of judge on June 11, 2002, and the motion was allowed.

James testified at a pretrial hearing on December 3, 2002.  James stated that when he accepted the appointment to represent the defendant, he was aware of the potential conflict due to his representation of Flores.  The defendant was also aware of the conflict and expressed that concern in a letter to the presiding judge.  James told the assistant State's Attorney, Patrick Duffy, who was handling the defendant's case for the State, that he thought that he had a conflict in representing the defendant.  James explained that he had previously represented Flores and had arranged a "deal" for Flores whereby Flores would make a statement against the defendant.  James represented Flores in April 2002 when Flores gave a statement to the effect that the defendant had admitted to him, when they were in jail together, that he had set the fire at Rebecca's mobile home.  Duffy told James that he did not think that there would be a conflict unless the State planned to call Flores to testify about that statement, and Duffy told James that the State did not plan to do so.  We note that numerous charges had been filed against the defendant in addition to those alleging aggravated arson.  While the two were in jail, the defendant apparently spoke to Flores about several of the alleged offenses.  James testified that Duffy had stated that Flores' testimony would not be necessary in the prosecution of the "arson and kidnaping charges."  Duffy wanted to avoid another defense counsel's withdrawal from the defendant's case.

James discussed the situation with the defendant, including what Duffy had stated about not calling Flores as a witness.  James told the defendant that Duffy did not believe that James had a conflict unless Flores was called as a witness and that the State did not plan to call Flores to testify.  The defendant agreed that James could represent him, based upon the fact that the State did not plan to call Flores as a witness.  James filed various pretrial motions, and on September 30, 2002, State's Attorney John Bigler filed a third discovery answer, which indicated that he intended to call Flores as a witness.  James filed a motion to withdraw due to a conflict of interest.  On October 11, 2002, the motion was granted.

McArthur Allen was appointed as substitute counsel.  On November 4, 2002, Allen filed a motion to dismiss the charges on speedy trial grounds, alleging that the defendant was not responsible for the delay caused by the activities of his former counsel, James.  The motion was denied, and the issue was revisited prior to the trial, with the court denying the motion to reconsider.

At the conclusion of the trial the defendant was convicted of both counts of aggravated arson.  The circuit court then sentenced the defendant to concurrent terms of eight years' imprisonment on each count.  The speedy trial issue was again raised in posttrial motions, and the motions were denied.  The defendant appeals.

On appeal, the defendant claims that he was denied his right to a speedy trial where he was represented by counsel burdened with a conflict of interest and he did not waive that conflict.  For this reason, the defendant contends that the delays incurred by his conflict-burdened counsel, James, cannot be attributed to him.  We disagree.

According to section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2002)):

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for fitness ordered pursuant to Section 104-13 of this Act, by a fitness hearing, by an adjudication of unfitness to stand trial, by a continuance allowed pursuant to Section 114-4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal.  Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record."

The 120-day period begins to run automatically when a defendant is taken into custody (
People v. Sojak
, 273 Ill. App. 3d 579, 582, 652 N.E.2d 1061, 1064 (1995)), and a dismissal is mandatory when the 120-day period has been exceeded and any delay is not attributable to the defendant.  
People v. Schmidt
, 233 Ill. App. 3d 512, 514, 599 N.E.2d 201, 204 (1992).  A delay is attributable to the defendant when his act in fact causes or contributes to the delay.  
People v. Plair
, 292 Ill. App. 3d 396, 398, 686 N.E.2d 28, 31 (1997).  Agreed continuances, made on the record, for example, constitute affirmative acts of delay attributable to the defendant and will suspend the speedy trial period.  
Sojak
, 273 Ill. App. 3d at 582, 652 N.E.2d at 1064.  Any type of motion filed by the defendant which eliminates the possibility that the case could immediately be set for a trial also constitutes an affirmative act of delay attributable to the defendant.  See 
People v. McDonald
, 168 Ill. 2d 420, 440, 660 N.E.2d 832, 840 (1995).  And if there are two reasons for a delay, one attributable to the State and the other to the defendant, the fact that the delay was partially attributable to the defendant will be sufficient to toll the statutory term.  
People v. Smith
, 251 Ill. App. 3d 839, 843, 623 N.E.2d 857, 860 (1993); 
People v. Grant
, 104 Ill. App. 3d 183, 188, 432 N.E.2d 1129, 1132 (1982).  A delay, however, cannot be attributed to the defendant when the record is silent.  
Sojak
, 273 Ill. App. 3d at 582, 652 N.E.2d at 1064-65.  Similarly, a defendant's failure to object to the State's request for a delay, for example, cannot be considered an agreement or waiver of the right to a speedy trial by the defendant.  
Sojak
, 273 Ill. App. 3d at 583, 652 N.E.2d at 1065.  Although not all motions cause delay, whether a motion in fact causes delay depends on the facts and circumstances of each case.  
People v. Ladd
, 294 Ill. App. 3d 928, 932, 691 N.E.2d 896, 901 (1998).  Delays naturally associated with the processing of defense motions suspend the speedy trial clock.  
Ladd
, 294 Ill. App. 3d at 931, 691 N.E.2d at 900.  The circuit court's determination of who is responsible for a delay of the trial is entitled to much deference and should be sustained absent a clear showing that the circuit court abused its discretion.  
People v. Kliner
, 185 Ill. 2d 81, 115, 705 N.E.2d 850, 869 (1998).

In the case at hand, the defendant was taken into custody for aggravated arson on April 8, 2002.  On April 9, 2002, Cox was appointed to represent the defendant.  A preliminary hearing was set for April 18, 2002.  Cox moved to withdraw as counsel on April 15, 2002.  The 10 days from April 8, 2002, to April 17, 2002, are not attributable to the defendant.  See 
People v. Collum
, 98 Ill. App. 3d 385, 387, 424 N.E.2d 440, 442 (1981).

Stark entered his appearance on April 18, 2002, and moved to continue the preliminary hearing until May 16, 2002.  The 28 days from April 18, 2002, to May 15, 2002, are attributable to the defendant.  See 
People v. Young
, 46 Ill. 2d 82, 85, 263 N.E.2d 72, 73 (1970).

The preliminary hearing was held on May 16, 2002, and an arraignment date of June 6, 2002, was set.  The 21 days from May 16, 2002, to June 5, 2002, are not attributable to the defendant.  See 
People v. Vasquez
, 311 Ill. App. 3d 291, 295, 724 N.E.2d 984, 987-88 (2000).

On June 6, 2002, Stark was granted leave to withdraw due to the defendant's failure to pay attorney fees.  James was appointed to represent the defendant, and the arraignment was continued to June 20, 2002.  Hearings and rulings on subsequent defense motions, including the motion for a substitution of judge, the motion for a fitness examination, and the motion for an investigator, further delayed the arraignment until September 18, 2002.  The 104 days from June 6, 2002, to September 17, 2002, are attributable to the defendant.  See 725 ILCS 5/103-5(a) (West 2002); 
Kliner
, 185 Ill. 2d at 116-17, 705 N.E.2d at 869-70.

The defendant was arraigned on September 18, 2002, and a trial date was set for October 15, 2002.  On October 3, 2002, the defendant filed a motion to suppress his statements and three motions 
in limine
.  The motions 
in limine
 were ruled upon on October 8, 2002, and the motion to suppress was denied on October 9, 2002.  Hence, the motions did not, in fact, cause a delay.

On October 11, 2002, James moved to withdraw.  James stated that he was not aware that a conflict had arisen until October 8, 2002, because prior to that time he had not believed that Flores would be called to testify for the State.  (We note that a supplemental discovery answer was apparently filed on September 30, 2002, indicating that the State intended to call Flores as a witness.)  The defendant indicated that he did not wish to waive the conflict, and the motion to withdraw was granted.

Allen was then appointed to represent the defendant, and he filed for various continuances.  The State concedes that since it changed its position regarding witness Flores and created the conflict that led James to withdraw, the continuances obtained by attorney Allen could not be attributed to the defendant.

The defendant's trial began on December 9, 2002.  The 82 days from September 18, 2002, to December 8, 2002, are not attributable to the defendant.  See 
People v. Perkins
, 90 Ill. App. 3d 975, 979-80, 414 N.E.2d 110, 113-14 (1980).

The defendant was in pretrial custody for 245 days.  James represented him for 127 of those days.  Although the defendant argues that none of the 127 days should be delay attributable to him, we disagree.  See 
People v. Bradley
, 348 Ill. App. 3d 677, 683-84, 810 N.E.2d 494, 498-99 (2004) (the court held that conflict-burdened counsel's requests for delays in the trial were properly attributable to the defendant and that counsel's requests and consents were not rendered null and void).  

For the foregoing reasons, we find that 132 of the 245 days that the defendant spent in pretrial custody are attributable to him and that the remaining 113 days do not implicate a violation of the defendant's statutory right to a speedy trial.

Next, the defendant claims that one of his convictions for aggravated arson must be vacated because there was only one act of arson.  We agree.

The Fourth District Appellate Court has already addressed this argument in 
People v. Hanks
, 174 Ill. App. 3d 555, 560-61, 528 N.E.2d 1044, 1047-48 (1988), where the court, relying on 
People v. Williams
, 131 Ill. App. 3d 597, 475 N.E.2d 1082 (1985), and 
People v. Mercado
, 119 Ill. App. 3d 461, 456 N.E.2d 331 (1983), held, "[The] defendant was properly convicted of two offenses of aggravated arson against two victims resulting from [the] defendant's single act of arson."  Although we agree that based upon 
Williams
 and 
Mercado
 multiple crimes may arise out of a single act where separate individuals are victims of the act, we disagree that is the case in an aggravated arson like the instant one, where one fire was set and two individuals were physically unharmed by the fire.

In 
Williams
, the defendant was convicted of three separate homicides and one aggravated arson, which resulted in the death of three people in the fire.  The separate offenses were (1) the starting of the fire and (2) the killing of the three people.  In 
Mercado
, three reckless homicide convictions were the result of three people being killed as a result of reckless conduct.  The defendant in 
Mercado
 was driving under the influence of alcohol.

The language of the reckless homicide and felony-murder statutes makes it clear that the focus is on the death of the victim (see 720 ILCS 5/9-3(a), 9-1(a) (West 2002)), or the result of the act, and that they are crimes against individuals.  The basic crime of arson is the illegal use of fire or explosives or the act of setting the fire.  720 ILCS 5/20-1 (West 2002).  In the aggravated arson statute, the focus is also on the act of arson itself, with the offense elevated due to the fact that the defendant "knows or reasonably should know that one or more persons are present" inside the structure.  720 ILCS 5/20-1.1(a)(1) (West 2002).  If Cobb and Murray had been seriously injured by the arson, the defendant, if so charged, could have been convicted of two counts of attempted murder.  For these reasons, the 
Williams
 and 
Mercado
 decisions are distinguishable from the instant case and the 
Hanks
 decision.  We respectfully disagree with the 
Hanks
 court's decision that two convictions for aggravated arson are proper when two unharmed potential victims are involved and only one fire was set.  For this reason, one conviction for aggravated arson is proper in the instant case.

The defendant argues that if this court finds that one conviction for aggravated arson should be vacated, then this court should remand for a new sentencing hearing.  We disagree.

After weighing the relevant aggravating and mitigating factors, the court noted that aggravated arson is a Class X felony punishable by a term of imprisonment from 6 to 30 years.  The circuit court denied the State's request that consecutive sentences be imposed and determined that concurrent eight-year terms were appropriate.  We have reviewed the record and find that there is nothing in the record to suggest that the circuit court's reasoning was influenced by the fact that the defendant was charged with two counts, and "[t]here is nothing in the record to indicate [the] defendant's sentence would have been less severe had [the] defendant been convicted of only one charge."  
People v. Bridges
, 188 Ill. App. 3d 961, 969, 545 N.E.2d 367, 372 (1989).

For the foregoing reasons, one aggravated arson conviction and sentence is affirmed, and one aggravated arson conviction and sentence is vacated because both convictions resulted from a single act of arson.

Affirmed in part and vacated in part.

HOPKINS and WELCH, JJ., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 09/22/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.